Greater Boston Real Estate Board *v.* Board of Registration of Real Estate Brokers & Salesmen.

GREATER BOSTON REAL ESTATE BOARD *vs.* BOARD OF
REGISTRATION OF REAL ESTATE BROKERS AND SALESMEN.[1]

Suffolk. March 7, 1989. — July 11, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Administrative Law*, Agency, Regulations. *Escrow. Contract*, With broker.

The Board of Registration of Real Estate Brokers and Salesmen lacked authority under G. L. c. 112, § 87AAA (*d*), or under G. L. c. 13, § 56, to promulgate a regulation mandating certain procedures that brokers must follow in the event of a dispute involving an escrow deposit. [363-364]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on October 2, 1987.

The case was reported by *Wilkins*, J.

*Richard J. McCarthy* for the plaintiff.

*Despena Fillios Billings*, Assistant Attorney General, for the defendant.

*Robert S. Kutner*, for Massachusetts Association of Realtors, amicus curiae, submitted a brief.

ABRAMS, J. We declare that a regulation issued by the Board of Registration of Real Estate Brokers and Salesmen (board) is void because it is in excess of the board's disciplinary and administrative authority. The Greater Boston Real Estate Board (GBREB), an organization which represents the interests of real estate brokers, filed a complaint in the single justice session requesting a declaration that the board's regulation, 254 Code Mass. Regs. § 2.05 (13) (1987),[2] be declared to be beyond the

---

[1] The Massachusetts Association of Realtors filed a brief as amicus curiae.

[2] Title 254 Code Mass. Regs. § 2.05 (13) provides:

"(a) The following procedures *shall govern the resolution of deposit disputes* between sellers/lessors and prospective purchasers/lessees of real property in the Commonwealth of Massachusetts, notwithstanding any

board's authority and therefore void. The regulation describes the procedures which brokers *must* follow in the event that a dispute arises about a deposit held in escrow by a broker. A single justice of this court reserved and reported the case to this court on the complaint, answer, and statement of agreed facts.

We summarize the agreed facts. Before the board issued its regulation, GBREB published and made available to real estate brokers and salesmen, and to buyers and sellers of real property, a form purchase and sales agreement. This standard form contained a clause stating that "[a]ll deposits . . . shall be held in escrow by the Broker(s) and shall be duly accounted for at the time for performance . . . provided however that in the event of any disagreement the Broker(s) . . . may retain said deposits pending instructions mutually given by the SELLER and the BUYER." The board became concerned about the propriety of this clause in the GBREB form agreement. The board also expressed general concern that brokers may be confused about the meaning of the statutory requirement that they remit deposits "within a reasonable time." G. L. c. 112, § 87AAA (*d*)

---

agreement between the parties to the contrary.

"(b) Where a dispute arises between a seller and prospective purchaser or lessor and prospective lessee over entitlement to a deposit made for the purchase or leasing of real property the broker of record must, within a reasonable time, make a good faith determination as to the rightful party and return such deposit.

"(c) A reasonable time for return of a deposit to the rightful party shall not exceed 14 days from the date upon which the broker acquired or should have acquired knowledge of the dispute; provided, however, that the agreement in the transaction clearly indicated the rightful party to the deposit.

"(d) Where the agreement does not clearly indicate the rightful party to whom the deposit belongs the broker of record must follow the procedure as herein provided:

"1. seek resolution by the seller/lessor and prospective purchaser/lessee within 21 days from the date upon which the broker acquired or should have acquired knowledge of the dispute; or

"2. where the seller/lessor and prospective purchaser/lessee fail to resolve their deposit dispute within the aforementioned 21 days the broker shall file an action for interpleader within 30 days after expiration of the above mentioned 21 days."

(1986 ed.).[3] In response to these concerns, the board unanimously approved 254 Code Mass. Regs. § 2.05 (13) after proper notice and public hearing. See note 2, *supra.*

If valid, the regulation governs the resolution of deposit disputes between buyers and sellers[4] of real property in Massachusetts, "notwithstanding any agreement between the parties to the contrary." 254 Code Mass. Regs. § 2.05 (13)(a). If a dispute about money deposited with the broker arises between a buyer and seller and the broker is unable to determine to whom the money rightfully belongs, the broker must seek resolution of the dispute by the parties. *Id.* at § 2.05 (13)(b)-(d)(1). If the parties fail to resolve the dispute within twenty-one days of the time the broker learned or should have learned of the dispute, "the broker shall file an action for interpleader," within thirty days of the original twenty-one days. *Id.* at § 2.05 (13)(d)(2).

The board's regulation contains no exception for cases in which the parties contractually agree to put the deposit in escrow and to designate the broker as the escrow holder. The board acknowledges, as it must, that the effect of the regulation is to discourage brokers from agreeing to act as an escrow holder for the buyer and seller if the parties decide to provide by contract a different mechanism for resolving possible disputes about deposits. If the broker becomes an escrow holder under such an agreement, the regulation mandates that the broker either violate his fiduciary responsibilities[5] under the agreement or face sanctions from the board. Such sanctions

---

[3] In relevant part, § 87AAA provides: "The board may suspend, revoke or refuse to renew any license, when the board has found as a fact that the licensee, in performing or attempting to perform any act authorized by his license, has . . . (*d*) failed, within a reasonable time, to account for or remit any moneys belonging to others which have come into his possession as a broker or salesman."

[4] The regulation calls the parties "sellers/lessors" and "prospective purchasers/lessees." We shall call the parties "buyers and sellers."

[5] As a matter of law, a broker who acts as an escrow holder, like any escrow holder, "is bound to act in strict compliance with the terms of the escrow agreement." *Schmid* v. *National Bank of Greece*, 622 F. Supp. 704, 710 (D. Mass. 1985), aff'd, 802 F.2d 439 (1st Cir. 1986).

may include revocation of the broker's license. See note 3, *supra*. GBREB asserts that such a result is arbitrary, capricious, and beyond the board's authority.

"An agency's powers are shaped by its organic statute taken as a whole." *Commonwealth* v. *Cerveny*, 373 Mass. 345, 354 (1977). "The starting point of our analysis is the language of the statute, 'the principal source of insight into legislative purpose.'" *Simon* v. *State Examiners of Electricians*, 395 Mass. 238, 242 (1985), quoting *Commonwealth* v. *Lightfoot*, 391 Mass. 718, 720 (1984). General Laws c. 112, § 87AAA (*d*), charges the board with the duty to ensure that brokers "within a reasonable time" remit funds that have come into their possession as brokers. See note 3, *supra*. Nevertheless, nothing in the statute precludes buyers and sellers, who are not subject to the board's jurisdiction, from themselves determining in an escrow agreement what shall constitute "a reasonable time."

No provision in G. L. c. 112, § 87AAA, authorizes the board to forbid brokers from carrying out the terms of a lawful escrow agreement which does not violate either the obligations placed on brokers by the statutory scheme, professional responsibilities, or public policy. We discern nothing in the statute which can be read to authorize the promulgation of regulations restricting brokers from acting in accord with valid contractual obligations set by the parties.

The board argues that, even if G. L. c. 112, § 87AAA (*d*), does not authorize the promulgation of the regulation, the board had authority to issue it under the general power to "make such rules and by-laws as it may deem necessary in the performance of its duties." G. L. c. 13, § 56 (1986 ed.). In light of its enabling statute, the board correctly notes that the issue is whether the powers granted by the Legislature to the board, taken as an organic whole, authorize the board's regulation. See *Commonwealth* v. *Cerveny*, *supra*. General Laws c. 13, § 56, allows the board to issue regulations to fulfil its duty to discipline brokers, which is described in G. L. c. 112, §§ 87AAA-87BBB.[6] The statutory rulemaking authority of the board con-

---

[6] The other statutory duties of the board relate to licensing brokers and salesmen. See G. L. c. 112, §§ 87PP-87ZZ, 87CCC-87DDD½.

cerning broker discipline is limited to the administration of these sections. See *Grocery Mfrs. of Am., Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 75-76 & n.5 (1979). In cases, such as this one, in which the enabling authority granted by the Legislature is narrow, "closer scrutiny of the authority of the agency is required." *Id.* at 75.

Reading the sections of the statute concerning the board's duties in the most generous manner, we can discern only the purpose of ensuring that brokers be duly licensed and act legally and in a manner which comports with public policy.[7] The board is not authorized to mandate that, having agreed to act as an escrow holder under a contract, a broker must breach his fiduciary obligations and act in conformity with the board's regulation, rather than with the terms of the contract.[8]

The case is remanded to the Supreme Judicial Court for the county of Suffolk for entry of a judgment declaring that 254 Code Mass. Regs. § 2.05 (13), is void because the board lacked authority to issue it.

*So ordered.*

---

[7] For example, among other things, § 87AAA expresses an intent to prevent brokers' involvement in the following acts: misrepresentation, conflict of interest, failure to remit moneys, fee sharing, commingling of money and racial discrimination. See G. L. c. 112, § 87AAA(a)-(l). The conduct described in the statute clearly relates to discipline and to acts which are either criminal or against public policy.

[8] The board has not argued that, if part of the regulation lacks statutory authorization, other identifiable parts might be determined to be validly authorized. "The issue is not before us when the author of the regulation does not advocate such a result." *Life Ins. Ass'n.* v. *Commissioner of Ins.*, 403 Mass. 410, 418 n.8 (1988).