HENRY ZACHS[1] & another[2] *vs.* DEPARTMENT OF PUBLIC
UTILITIES.

Suffolk. September 14, 1989. - December 11, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Public Utilities*, Judicial review, Findings. *Department of Public Utilities.*
*Mobile Radio Paging System. Administrative Law*, Substantial evi-
dence, Adjudicatory proceeding, Rule making, Judicial review,
Agency's interpretation of statute, Rehearing, Findings. *Statute*, Con-
struction. *Words*, "Public convenience and necessity."

There was substantial evidence before the Department of Public Utilities
to support the department's decision to grant a certificate of public con-
venience and necessity to a corporation that proposed to operate a mo-
bile radio paging system in the Springfield area. [220-223]
In a proceeding before the Department of Public Utilities brought by a
corporation seeking a certificate of public convenience and necessity to
operate a mobile radio paging system in the Springfield area, it was not
error for the department to use the concept of "public interest" in de-
termining that the applicant satisfied the "public convenience and ne-
cessity" test. [223-224]
In a proceeding before the Department of Public Utilities brought by a
corporation seeking a certificate of public convenience and necessity to
operate a mobile radio paging system in the Springfield area, the de-
partment neither lacked substantial evidence nor acted arbitrarily and
capriciously in concluding that the company had the managerial, finan-
cial, and technical capability to operate its proposed mobile radio pag-
ing facility in Springfield. [224-226]
Interveners in a proceeding before the Department of Public Utilities who
discovered, subsequent to the close of hearings, that an applicant for a
certificate of public convenience and necessity to operate a mobile radio
paging service had begun construction of its facility prior to the depart-
ment's issuance of the certificate, in alleged violation of G.L. c. 159,
§ 12B, failed to demonstrate "good cause" requiring the department to
reopen hearings under its own regulations absent the interveners' show-

---

[1]Doing business as Massachusetts-Connecticut Mobile Radio Telephone
Company.

[2]Airphone Company Inc.

ing that the department had committed either error of law or abuse of discretion. [226-229]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on January 2, 1986.

The case was reported by *Wilkins, J.*

*John A. Weber, Jr., (Patricia A. McDaniels* with him) for the plaintiff.

*Lisa A. Levy,* Assistant Attorney General, for the defendant.

LYNCH, J. The plaintiffs, Henry Zachs, doing business as Massachusetts-Connecticut Mobile Radio Telephone Company, and Airphone Company Inc., intervened in a proceeding before the Department of Public Utilities (department) brought by T-Com, Inc., which was seeking a certificate of public convenience and necessity to operate a mobile radio paging system in the Springfield area. The department granted the certificate and the plaintiffs sought review under G. L. c. 25, § 5 (1988 ed.),[3] in the Supreme Judicial Court for Suffolk County. The plaintiffs claim that the department's decision in favor of T-Com was arbitrary and capricious, unsupported by substantial evidence, and therefore an abuse of its discretion, and that its denial of their request to reopen the hearings violated the department's own regulations. At the request of the parties, a single justice reserved and reported the matter to the full court without decision. We affirm the decisions of the department.

The following facts are from the department's opinion.[4] Two years prior to these proceedings, T-Com entered the radio paging business in Michigan. In an effort to expand out of State, the company applied to the Federal Communications Commission (FCC) for paging licenses in thirty-eight

[3]General Laws c. 25, § 5, states in pertinent part: "An appeal as to matters of law from any final decision, order or ruling of the [Department of Public Utilities] may be taken to the supreme judicial court by an aggrieved party in interest . . . ."

[4]*T-Com, Inc.,* D.P.U. No. 84-104 (1985).

markets nationwide. It had already secured the necessary licenses and construction permits in a number of these markets, including Springfield, when it filed with the department its application for a certificate of public convenience and necessity under G. L. c. 159, § 12B (1988 ed.). T-Com is a wholly owned subsidiary of C C & S Systems, Inc., a Michigan corporation that is a holding company for a number of independent telephone companies operating in Michigan and Ohio.

In June, 1985, three months after the department closed hearings in the T-Com case, and after the parties had submitted and exchanged both briefs and reply briefs, the plaintiffs moved to reopen hearings. Zachs and Airphone argued that T-Com had violated c. 159, § 12B, by proceeding, in April, 1985, after the close of hearings, with construction of its proposed Springfield radio paging facility before the department had rendered a decision on whether to grant it a certificate of public convenience and necessity. T-Com acknowledged that it had indeed begun construction. But the department found that T-Com began construction only days before its FCC construction permit — on which it had already once applied for and been granted an extension — was to expire. It also found that T-Com had not begun operations out of the facility; that it had no intention to do so until a certificate was granted; and that it would dismantle the facility in the event of a denial. On that basis, the department declined to reopen the hearings.

The department then decided that T-Com had demonstrated the requisite "financial, managerial and technical ability for certification and that the public convenience and necessity will be served by the proposed Springfield operation," and granted T-Com's application.

Our review of both of the department's decisions is governed by standards set forth in G. L. c. 30A, § 14 (7) (1988 ed.). We will uphold the department's actions unless the plaintiffs can demonstrate that they are flawed by an error of law, lack support by substantial evidence, are arbitrary or ca-

pricious, or suffer from one of the other defects spelled out in § 14 (7).

1. *The decision to grant the certificate of public convenience and necessity.* In determining whether a certificate should be granted, the department looks at the applicant's managerial, financial, and technical ability to provide quality service to the public, as well as the public need for the service. 220 Code Mass. Regs. §§ 35.05(2), 35.15 (1986). The plaintiffs challenge the issuance of a certificate of public convenience and necessity on three grounds: (a) the department lacked substantial evidence to make the finding of public convenience and necessity; (b) the department's equating of the standard of "public convenience and necessity" with "public interest" was arbitrary and capricious; and (c) the department both lacked substantial evidence and was arbitrary and capricious in deciding T-Com had the managerial, financial, and technical wherewithal to operate a mobile radio utility system in Springfield. These arguments fail for the reasons discussed below.

a. *Lack of evidence for finding of public convenience and necessity.* General Laws c. 30A, § 1 (6), defines "[s]ubstantial evidence" as "such evidence as a reasonable mind might accept as adequate to support a conclusion." In assessing whether "substantial evidence" existed for the department's finding on public convenience and necessity, the court is required by c. 30A, § 14 (7), to "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." We conclude the department had substantial evidence on this issue.

At the outset, we reject the plaintiffs' contention that there was *no* evidence in this record to merit a finding of public convenience and necessity. T-Com introduced evidence of the specific services it planned to offer Springfield area customers, the public need for these services, as well as the public demand for more options in radio paging services as a whole. The plaintiffs, who vigorously cross-examined the T-Com witnesses on other issues, did not challenge these assertions

nor did they offer testimony to contradict the T-Com evidence.

However, the department did rely on a finding of the benefits of increased competition in the radio paging market it had made in a prior decision. *MCI Airsignal, Inc.,* D.P.U. No. 1563 (1985). In *T-Com, Inc.,* D.P.U. No. 84-104 (1985), the department cited its general policy that competition tended to result in lower prices, more diverse services, and greater choices for the consuming public. It then stressed its specific findings in *MCI Airsignal* regarding the existing level of competition in the radio paging market and the further benefits expected to enure to the public from opening that market to still greater competition. The plaintiffs argue that, because there was no examination of the competition issue during the T-Com hearings,[5] the department was precluded from going outside the record to findings made on that issue in *MCI Airsignal.*[6] We do not agree.

The department's findings on the advantages to the public of increased competition fall into the category of nonadjudicative, policy-making judgments, rather than party-specific fact finding. See 3 K.C. Davis, Administrative Law § 15.3, at 142-145 (1980). Administrative agencies may establish policy through either adjudicatory proceedings or rulemaking. *Commonwealth Elec. Co.* v. *Department of Pub. Utils.,* 397 Mass. 361, 369 (1986). *Arthurs* v. *Board of Registration in Medicine,* 383 Mass. 299, 312-313 (1981). *NLRB* v. *Seven-*

---

[5]As we pointed out above, we find there was clearly some evidence on this issue. Certainly, the issue was not fully litigated, with days of testimony from witnesses presented by both sides, as it was in *MCI Airsignal.*

[6]Zachs, one of the two plaintiffs in this case, was also granted intervener status in *MCI Airsignal.* Under the department's regulations, that made him a "party" to the case, fully entitled to all the due process rights of any other party.

Many courts and commentators have held issue preclusion to be applicable to the same extent in administrative hearings as in court proceedings. See *United States* v. *Utah Constr. & Mining Co.,* 384 U.S. 394, 421-422 (1966); Restatement (Second) of Judgments § 83 (1982). Because issue preclusion has not been relied on in this case, we do not decide the challenged use of the *MCI Airsignal* findings with respect to Zachs on that basis. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

*Up Bottling Co.*, 344 U.S. 344, 349 (1953). The choice of which process to utilize belongs to the agency. *Arthurs* v. *Board of Registration in Medicine, supra* at 313. Policies announced in such adjudicatory proceedings may then serve as precedents in future cases. *Id.*

In *MCI Airsignal*, the department heard conflicting testimony, challenged by rigorous cross-examination, on the issue of the competitive state of the radio paging market and the potential benefits and disadvantages of increasing competition by certifying another entrant to that market. In two 1984 cases, it had also taken extensive testimony on competition in the telecommunications field in general, including the impact of the recent Federal policy shift in favor of deregulation.[7] The department was entitled in the *T-Com* case to use the cumulative experiences gleaned in these proceedings, together with its expertise in the field to make a nonadjudicative fact finding without a full-blown relitigation of the issue on the *T-Com* record.

Since, in *MCI Airsignal* and in other recent decisions, the department has made public its policy favoring heightened competition, the plaintiffs were on notice of the department's policy on this question.[8] G. L. c. 66, § 6 (1988 ed.). If they wished to challenge the department's position, they had the burden of introducing evidence to establish its invalidity.

---

[7]See *First Phone, Inc.*, D.P.U. No. 1581 (1984) (decision to grant certificate of public convenience and necessity to provide intrastate WATS telecommunication services, citing the benefits of a more competitive market to the public); *Boston Cellular Geographic Serv.*, D.P.U. No. 1565 (1984) (decision to grant certificate of public convenience and necessity to provide cellular mobile radio utility services, also citing benefits in form of increased choice of products and pricing schemes as a result of more competition).

The plaintiffs argue extensively that it is an error of law for the department to take note of the experience of Federal agencies in its regulatory field, and to adopt Federal policies it decides will prove beneficial to Massachusetts consumers as well. We see no principled reason to limit the department's policy-making function on the ground that it is following the lead of Federal agencies.

[8]Zachs, of course, had actual notice from his participation as an intervener in the *MCI Airsignal* case. See note 6, *supra.*

Neither Zachs nor Airphone did so. The department's decision on public convenience and necessity cannot, therefore, be assailed as lacking a basis in substantial evidence.

b. *The equating of "public interest" with "public convenience and necessity."* The plaintiffs contend that the department supported its decision in favor of T-Com by a finding of "public interest," rather than "public convenience and necessity," and thus caused the decision to be "arbitrary and capricious." G. L. c. 30A, § 14 (7) (*g*).

The department found that "there is a public need for the service proposed by T-Com," and concluded that "the public convenience and necessity will be served by the proposed Springfield operation." The plaintiffs, however, ignore these passages, and focus exclusively on the department's findings that it was "reasonable to expect that the public would both be protected by and benefit from more vigorous competition in the paging industry," and that "the public interest will be served by further competition in the paging industry." These statements, they argue, reveal that the department arbitrarily invoked a different standard from "public convenience and necessity" — namely, "public interest."

The court has stated that the "public convenience and necessity" standard allows the department to exercise wide discretion to take into account a broad range of factors in making the determination whether it has been met. *Almeida Bus Lines, Inc.* v. *Department of Pub. Utils.*, 348 Mass. 331, 344 (1965). *Holyoke St. Ry.* v. *Department of Pub. Utils.*, 347 Mass. 440, 450 (1964). *Newton* v. *Department of Pub. Utils.*, 339 Mass. 535, 547 (1959) (all of which discussed the propriety of using the value of competition as a basis for making a "public convenience and necessity" finding).

The common theme running through our cases in this regard is that, since the mission of the agency is to regulate in the public interest, this is the overriding meaning of the term "public convenience and necessity." Courts have frequently used the phrase "public interest" in discussing challenges to findings of "public convenience and necessity." *Holyoke St. Ry.* v. *Department of Pub. Utils.*, *supra* at 445, 450. *Newton*

v. *Department of Pub. Utils., supra* at 546. See *Burlington Truck Lines* v. *United States,* 371 U.S. 156, 167 (1962).

Moreover, the phrase "public convenience and necessity" is a term of art that stands for the general notion of "public interest." See Jones, Origins of the Certificate of Public Convenience and Necessity: Developments in the States, 79 Colum. L. Rev. 426, 427 (1979) (tracing the history of the use of the term). Other courts have agreed that the phrase is "simply a conclusory symbol" for public benefit, good, or interest. *Professional Mobile Home Transp.* v. *Railroad Comm'n of Tex.,* 733 S.W.2d 892, 894-895 n.1 (Tex. Ct. App. 1987). See *Chesapeake & Ohio Ry.* v. *United States,* 283 U.S. 35, 42 (1931). We conclude, therefore, that it was not error for the department to use the concept of "public interest" in determining that T-Com's application satisfied the "public convenience and necessity" test.

c. *The findings of managerial, financial, and technical ability.* Finally, the plaintiffs assert that the department both lacked substantial evidence and was arbitrary and capricious in concluding T-Com has the managerial, financial, and technical capability to operate its proposed mobile radio paging facility in Springfield. We do not agree.

On each of these prerequisites the department had before it T-Com's testimony and financial records. Thus, it had "such evidence as a reasonable mind might accept as adequate to support a conclusion" — the statutory definition of substantial evidence. G. L. c. 30A, § 1 (6). That T-Com's evidence regarding these issues was subjected to strenuous cross-examination by the plaintiffs does not advance their cause. The weight of the evidence is for the department to decide. "A court may not displace an administrative board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Southern Worcester County Regional Vocational School Dist.* v. *Labor Relations Comm'n,* 386 Mass. 414, 420 (1982), quoting *Universal Camera Corp.* v. *NLRB,* 340 U.S. 474, 488 (1951). This principle extends to credibility determinations and inferences

the department was entitled to draw from all the evidence. *Pyramid Co. of Hadley* v. *Architectural Barriers Bd.*, 403 Mass. 126, 130 (1988).

On the managerial and technical qualifications issues, the department had before it evidence of T-Com's prior and continuing operation of similar radio paging facilities, detailed plans to establish and supervise the Springfield facility, experience with technical maintenance and the like. It rejected the assertion that, because T-Com's headquarters were in Michigan and technical maintenance would be provided by a local contractor, the company failed to prove it had the technical capability to provide proper service to Springfield area customers. We give "due weight to the experience, technical competence and specialized knowledge of the agency," and therefore conclude that the judgments of the department are neither unsupported by substantial evidence nor arbitrary and capricious. *Seagram Distillers Co.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 713, 721 (1988), quoting G. L. c. 30A, § 14 (7).

Similarly, on the question of T-Com's financial ability, it was within the department's discretion to give greater weight to T-Com's substantially increased recent net income than its over-all deficit position, stemming from the company's transition in business focus from data processing services to radio paging. Given T-Com's testimony that its parent corporation had committed itself to providing T-Com with whatever financial assistance it might need to make the Springfield project a success, it was not unreasonable for the department to find that T-Com had sufficient financial means to operate the Springfield facility. Neither the fact that the parent corporation's commitment was not in writing, nor the conclusion in a prior case that net income alone might not be an appropriate financial indicator on which to base a decision, compels a contrary result, nor renders the department's decision arbitrary and capricious.

Finally, the plaintiffs claim that the department's findings on financial ability are based on two evidentiary errors. Even if the department's finding that T-Com had a revolving line

of credit from its bank was unsupported by the evidence as alleged, there was other substantial evidence on which the department could make a finding of financial fitness. An error of this magnitude is not enough to undermine the decision. See *Trustees of Clark Univ.* v. *Department of Pub. Utils.*, 372 Mass. 331, 335 (1977). Secondly, the plaintiffs claim that the board improperly relied on a T-Com financial report that included the data of the company's 1984 increase in net income. They contend that this financial report which was not listed in the certificate of the record was not properly in evidence and should not have been relied upon by the department in deciding the issue of T-Com's financial qualifications. However, the presiding officer requested this evidence and directed T-Com to supply it in its reply brief.[9] The plaintiffs made no timely objection, although they had the opportunity to do so. That in addition there may have been an error in the certification of the record to this court is an insufficient basis on which to attack the department's decision.

2. *The decision not to reopen the hearings.* The plaintiffs argue that G. L. c. 159, § 12B, prohibits beginning construction of a mobile radio telephone facility without a certificate of public convenience and necessity,[10] and that c. 159, § 10, charges the department with "enforc[ing] this chapter." Since they discovered, subsequent to the close of hearings, that T-Com had begun such construction prior to the department's issuance of a certificate, the plaintiffs contend they demonstrated "good cause," requiring the department to reopen hearings under its own regulations, 220 Code Mass. Regs. § 1.11 (8) (1986).[11]

---

[9]Under the department's regulations, a presiding officer may call for further evidence and have it be submitted even after hearings have closed. 220 Code Mass. Regs. § 1.06(h) (1986).

[10]General Laws c. 159, § 12B, states in relevant part: "No person offering or proposing to offer mobile radio telephone service to the public within the commonwealth shall begin . . . the construction or operation of any mobile radio utility system . . . without a certificate . . . [of] public convenience and necessity . . . ."

[11]In pertinent part, 220 Code Mass. Regs. § 1.11(8), reads: "No person may present additional evidence after having rested nor may any hearing

In general, administrative agencies have broad discretion over procedural aspects of matters before them. *New Boston Garden Corp.* v. *Assessors of Boston*, 24 Mass. App. Ct. 122, 125 (1987). The decision whether to reopen hearings is one such procedural matter on which we have accorded agencies a great deal of flexibility. *Brookline* v. *Commissioner of the Dep't of Envt'l Quality Eng'g*, 387 Mass. 372, 385 (1982). In this case, this principle is additionally embodied in the department's regulation governing the reopening of hearings. 220 Code Mass. Regs § 1.11(8), clearly gives the department the discretion to do so in circumstances of merit ("except upon . . . showing of good cause"). Therefore, we will not disturb the department's decision not to reopen hearings without the demonstration of error of law or abuse of discretion.

The plaintiffs assert that beginning construction of the radio paging facility before the issuance of a certificate of public convenience and necessity is per se "good cause," since it is a clear violation of a statutory requirement. They contend that the use of imperative language in c. 159, § 12B ("[n]o person . . . shall begin . . . the construction . . . without a certificate") leaves the department no discretion at all in enforcement, and must, perforce, constitute "good cause" to reopen hearings when the violation occurs after they have closed. We do not construe the statute in this manner.

The department's powers are shaped by the statute as a whole. *Greater Boston Real Estate Bd.* v. *Board of Registration of Real Estate Brokers & Salesmen*, 405 Mass. 360, 363 (1989). The Legislature has delegated to the department the power to enforce c. 159. See G. L. c. 159, § 10. While the plaintiffs are correct that the Legislature has used the imperative voice in § 12B, in proscribing construction of facilities by such operators prior to receiving certificates of public convenience and necessity, the Legislature has also re-

---

be reopened after having been closed, except upon motion and showing of good cause . . . . The Department shall notify all parties of its action upon the motion."

mained conspicuously silent as to the consequences of a violation of this requirement. See *Brennan* v. *The Governor*, 405 Mass. 390, 395 (1989). Since the Legislature is presumed to understand and to intend all the consequences of its own actions, *id.*, and since it has left enforcement of c. 159 and the issuance of certificates of public convenience and necessity to the department, it follows that the department has the authority to determine what the consequences of an unauthorized construction will be in a given case. "[D]etails of legislative policy, not spel[led] out in the statute, may appropriately be determined, at least in the first instance, by an agency charged with administration of the statute." *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 344 (1964). We have held this discretion to be especially broad "when [the] agency is concerned with . . . setting enforcement policy." *Boston Preservation Alliance Inc.* v. *Secretary of Envt'l Affairs*, 396 Mass. 489, 498 (1986).

Here the department judged T-Com's violation on the basis of its effects on the public interest and concluded that T-Com's violation in this situation was not one that would render the company unfit for a certificate of public convenience and necessity — a subject explored at great length through five hearings. That being the case, the department ruled that the appellants had not met the minimum standard of "good cause" required to reopen the hearings. That decision was within the reasonable exercise of the department's discretion.

Finally, the plaintiffs' argument, that the department's decision not to reopen the hearings lacks subsidiary findings, fails even a cursory examination, since our discussion indicates that the department provided us with a "statement of reasons that allow us to determine the propriety of the order." *Costello* v. *Department of Pub. Utils.*, 391 Mass. 527, 534 (1984).[12] The department has given us a reasoned deci-

---

[12]We compare the department's decision in this case to the one we found insufficient in the *Costello* case. In that decision, the department summarized the facts for reopening a hearing argued by the intervener, then summarized the facts as contested on a number of grounds by the applicant,

sion describing why the rehearing was denied, *Brookline* v. *Commissioner of the Dep't of Envt'l Quality Eng'g, supra* at 385. We see no basis to disturb the department's discretionary judgment.

The decisions of the department in relation to T-Com's application for a certificate of public convenience and necessity are affirmed.

*So ordered.*

---

and perfunctorily stated: "After review of the arguments advanced by the parties and the record in the present proceeding, we find that the intervenor Costello has failed to show good cause for the reopening of the record." *Costello* v. *Department of Pub. Utils., supra* at 534-535 n. 7.