DANIEL E. BOSLEY vs. DEPARTMENT OF PUBLIC UTILITIES.[1]

Suffolk. December 6, 1993. - April 12, 1994.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Department of Public Utilities. Public Utilities*, Judicial review. *Administrative Law*, Judicial review. *Telephone Company.*

A decision of the Department of Public Utilities, concluding that the primary calling area of a certain telephone exchange did not need to be expanded because the existing service was not unjust or inadequate, was not shown to be arbitrary, capricious and an abuse of discretion. [512-513]

Substantial evidence supported a decision of the Department of Public Utilities concluding that the telephone service provided to customers in North Adams was not unfair or inadequate. [513-514]

In a proceeding before the Department of Public Utilities, the department's analysis of the adequacy of telephone service in a certain telephone exchange was in conformity with the provision of G. L. c. 159, § 16 [514], and the decision clearly satisfied the requirements of G. L. c. 30A, § 11 (8), that it be accompanied by a statement of reasons [514-515].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 22, 1992.

The case was reported by *Greaney*, J.

*John B. DeRosa (Jan P. Myskowski* with him) for the plaintiff.

*Amy Spector*, Assistant Attorney General, for the defendant.

*Barbara Anne Sousa* for the intervener.

LIACOS, C.J. This case comes to us on reservation and report from the single justice. The plaintiff, Massachusetts State Representative for the First Berkshire District, Daniel

---

[1] New England Telephone and Telegraph Company, intervener.

E. Bosley,[2] asks this court to modify or set aside D.P.U. 90-308, an order of the Department of Public Utilities (department) which denied Bosley's request to expand the primary calling area of the North Adams telephone exchange to include toll-free calling to Pittsfield. Bosley principally argues that the department committed error of law, and acted arbitrarily and capriciously, and abused its discretion when it refused to allow his request. We disagree, and affirm the department's order.

In June, 1990, the department issued an order, *New England Tel. & Tel. Co.*, D.P.U. 89-300. This order was the culmination of a four-year investigation into New England Telephone and Telegraph Company's (NET's) costs and rates, and resulted in a comprehensive restructuring of NET's rates throughout the Commonwealth. In the order, the department adopted a so-called "home and contiguous" standard to define the primary calling area (PCA) for telephone customers. A PCA for any particular telephone exchange consists of the exchanges that a customer subscribing to basic unlimited service may call without incurring a toll charge. The "home and contiguous" standard refers to the customer's home exchange and all geographically contiguous exchanges. The PCA of customers in the North Adams exchange (which includes the towns of North Adams, Clarksburg, and Florida) was expanded to include the contiguous Charlemont exchange. It did not include the Pittsfield exchange because it is not contiguous.

In October, 1990, Bosley wrote to the department, requesting that it reopen D.P.U. 89-300. The department's rules did not allow the case to be reopened; instead, the department opened a new investigation into Bosley's request. The department held a public hearing in North Adams on December 13, 1990. Approximately eighty-five persons attended the hearing, including Bosley. During the hearing, testimony was

---

[2]Representative Bosley did not formally petition to intervene at the Department of Public Utilities hearing. However, the hearing was clearly initiated at his request and he actively participated at the hearing. The department clarified his party status and allowed him to intervene late.

presented regarding the social and economic ties between the North Adams area and the Pittsfield area, and the disadvantages posed to residents in the North Adams exchange, compared to the other residents of Berkshire County, in not having toll-free calling to Pittsfield.

NET, an intervener in the case, presented one witness at the hearing. The staff director of rates and tariffs for Massachusetts testified that, since the restructuring in the rate system brought on by D.P.U. 89-300, the rates for toll calls from North Adams to Pittsfield had decreased significantly. He also testified that the home and contiguous standard expanded the PCA of North Adams to include the Charlemont exchange, and that customers in the North Adams exchange may call toll free to police, fire, hospitals, schools, and various State agencies.

Under the provisions of G. L. c. 159, § 16 (1992 ed.), the department may order NET to make changes in service if the department finds such service to be "unjust, unreasonable, unsafe, improper or inadequate." Before ordering a change, the department must consider "the relative importance and necessity of the changes . . . the financial ability of the carrier to comply with the requirements of the order, and the effect of . . . such other changes, if any, as may be deemed by the department of equal or greater importance and necessity in the performance of the service . . . ." G. L. c. 159, § 16.

The department concluded that the existing service is not unjust or inadequate, and therefore denied the request to reopen D.P.U. 89-300. The plaintiff complains that this decision was arbitrary, capricious, and an abuse of discretion, not supported by substantial evidence, and made in violation of certain procedural requirements. See *Wolf* v. *Department of Pub. Utils.*, 407 Mass. 363, 367 (1990).

Bosley claims that the "great inequity" which results from residents in the North Adams exchange having to pay to call Pittsfield, while other residents of northern Berkshire County do not, renders the department's decision arbitrary, capricious, and an abuse of discretion. We cannot agree. In

D.P.U. 90-308, the department explained that in D.P.U. 89-300, it had determined that a reasonable PCA would consist of a customer's home and contiguous exchanges. It restated why this conclusion was a proper balance of customers' interests in expansive PCAs against the advantages of a comprehensive rate structure that was cost-based, fair, ensured rate continuity for customers and earnings stability for NET, and protected universal service. The department recognized that customers in the North Adams exchange have strong social and economic ties to Pittsfield (and, implicitly, a strong interest in calling there toll free), but it made a decision, which can hardly be characterized as arbitrary, capricious, and an abuse of discretion, that the lower rates resulting from the adoption of the comprehensive "home and contiguous" standard were, over-all, the better result.

The department is better equipped than this court to balance the competing interests in such cases, and we afford it substantial deference in doing so. See *Zachs* v. *Department of Pub. Utils.*, 406 Mass. 217, 225 (1989), quoting *Seagram Distillers Co.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 713, 721 (1988). A decision is not arbitrary and capricious simply because it results in perceived "inequities." The fact is that all customers in northern Berkshire County have a PCA consisting of their home and contiguous exchanges. Not all can call the Charlemont exchange toll free, as those in the North Adams exchange can. That North Adams customers present convincing reasons why they have little need to call Charlemont but significant need to call Pittsfield, does not persuade us that the department's decision was arbitrary, capricious, and an abuse of discretion. The department's proffered reason — a comprehensive system and the over-all reduction in rates provided by that system — amply justifies the department's decision.

Bosley also argues that the department's conclusion that the service provided under D.P.U. 89-300 was not inadequate or unfair was not supported by substantial evidence. He contends that the department should have specifically resolved two factual questions: whether customers in the North Ad-

ams exchange are similarly situated with customers elsewhere in northern Berkshire County with respect to their "need to call Pittsfield" and, if so, whether the burden of requiring customers in the North Adams exchange to pay tolls for calls to Pittsfield is so significant as to result in inequity, therefore making the telephone service unfair. The department could properly rely on conclusions it had reached in D.P.U. 89-300 as to the appropriate scope of PCAs. The substantial evidence standard does not require that the department formulate its inquiry in the manner requested by Bosley. "Judicial inquiry under the substantial evidence test is limited to a determination of whether, within the record developed before the administrative agency, there is such evidence as a reasonable mind might accept as adequate to support the agency's conclusion." *Greater Media, Inc.* v. *Department of Pub. Utils.*, 415 Mass. 409, 417 (1993), quoting *Seagram Distillers Co.*, *supra* at 721. See G. L. c. 30A, § 1 (6) (1992 ed.). There was ample evidence to support the department's conclusion that the service provided to North Adams customers is not unfair or inadequate.

Similarly, Bosley's argument that the department committed an error of law because it "engaged in an analysis of the burden that a change in the North Adams primary calling area would have on the State-wide rate structure without first making an inquiry into" facts concerning the adequacy of telephone service to customers in the North Adams exchange is not persuasive. The department specifically addressed whether the service was adequate, and concluded that it was. The department did not depart from the analysis set forth in G. L. c. 159, § 16, simply by referring to the conclusions of D.P.U. 89-300 regarding the burden on the State-wide rate structure posed by expanded PCAs.

Finally, we note that Bosley's argument that the department's decision does not satisfy the requirement of G. L. c. 30A, § 11 (8), that an agency decision "be accompanied by a statement of reasons for the decision, including determination of each issue of fact or law necessary to the decision," is not supported by the record. The department's decision

clearly sets forth the reasons for its decision; it cites the statutory provision governing issuance of an order directing NET to change service; explains the rationale for the adoption of the "home and contiguous" standard in D.P.U. 89-300; and it cites testimony concerning the substantial reduction in rates applicable to customers in the North Adams exchange and the extent of their services.

Because we cannot say that the department's decision in D.P.U. 90-308 was arbitrary and capricious or an abuse of discretion, and because the plaintiff's other arguments also lack merit, we affirm the order of the department in D.P.U. 90-308.

*So ordered.*