BOSTON POLICE SUPERIOR OFFICERS FEDERATION *vs.*
CITY OF BOSTON.

Suffolk. January 7, 1993. - March 3, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Administrative Law*, Agency's interpretation of regulation. *Labor Rela-
tions Commission. Subpoena. Public Records. Police*, Records. *Pri-
vacy. Labor*, Police, Unfair labor practice.

The Labor Relations Commission was not limited, in its review of a hear-
ing officer's decisions to issue and modify subpoenas, to considering
whether there was an abuse of discretion; rather, it properly concluded,
based on the statutory and regulatory scheme, that the commission had
the ultimate authority to make an independent determination of the is-
sues. [462-465]

A Superior Court judge properly upheld the Labor Relations Commis-
sion's rulings that the public records law, G. L. c. 4, § 7, does not re-
strict the commission's power to subpoena documents pursuant to G. L.
c. 30A, § 12, in connection with a complaint before it and that the
subpoena request was not overbroad and irrelevant. [465-467]

Safeguards imposed by a Superior Court judge with respect to a Labor
Relations Commission subpoena for police department records were ad-
equate to protect the privacy and confidentiality interests at stake.
[467]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 30, 1990.

The case was heard by *J. Harold Flannery*, J., on a mo-
tion for judgment on the pleadings.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*James A. Brett* for the defendant.

*James F. Lamond* for the plaintiff.

*Jean Strauten Driscoll*, for Labor Relations Commission,
amicus curiae, submitted a brief.

GREANEY, J. We transferred this case here on our own motion to consider the appeal by the city of Boston (city) from a judgment entered in the Superior Court in an action brought by the Boston Police Superior Officers Federation (federation) for judicial enforcement of subpoenas pursuant to G. L. c. 30A, § 12 (5) (1990 ed.). The judgment substantially affirmed an order by the Labor Relations Commission (commission) directing the city to produce certain documents requested by the federation in its prosecution of a prohibited practice complaint issued by the commission. The documents include certain logs, cards, and files of the internal affairs division (IAD) of the Boston police department (department), as well as other intradepartmental communications and orders. We affirm the judgment.

The background of the case is as follows. On March 22, 1988, the city's police commissioner promoted thirty-three police sergeants to the rank of lieutenant. Sergeant William Broderick (Broderick), president of the federation, was not among those promoted. The federation filed a charge of prohibited practice with the commission alleging that the city had violated G. L. c. 150E (1990 ed.), the public employee labor relations law, by failing to promote Broderick in retaliation for Broderick's having engaged in protected union activities. After an investigation, the commission issued a complaint, and a hearing officer was appointed pursuant to G. L. c. 150E, § 11, to hear the evidence and to decide whether a prohibited practice had been committed.

Before the hearing on the merits of the complaint, the hearing officer, at the request of the federation, issued two subpoenas duces tecum in order to compel the production of certain documents by the city at the hearing. The city filed a motion to modify the second subpoena.[1] After a lengthy hearing on the complaint, pursuant to another federation request, the hearing officer issued a third subpoena duces te-

---

[1] Any witness under a commission subpoena may petition for relief from the subpoena. G. L. c. 30A, § 12 (4) (1990 ed.). 456 Code Mass. Regs. § 13.12 (5)(a) (1990).

cum. The city moved to quash in part and modify in part the third subpoena.

After investigation, the hearing officer essentially granted the city's motions and modified the subpoenas.[2] The city stated it would comply with the hearing officer's order. The federation, however, appealed from the hearing officer's decision to the full commission.[3] After consideration, the commission changed the hearing officer's order and directed the city to produce the documents under subpoena. A meeting occurred among the city, the federation, and the hearing officer at which the city refused to produce communications or personnel orders relating to Broderick between the Boston police commissioner and the department's bureau of professional standards that were made after March 22, 1988, or to produce any IAD files, logs, and cards without redacting the subject officers' names. The city also refused to produce a complete record of IAD logs and cards for the relevant period, arguing that its production should be limited to IAD log entries and cards for the thirty-three officers promoted to lieutenant on March 22, 1988.

After the commission refused to seek enforcement of its subpoenas due to personnel and resource shortages, the federation commenced this action in the Superior Court seeking judicial enforcement of the subpoenas pursuant to G. L. c. 30A, § 12 (5).[4] A judge in the Superior Court concluded that the case was appropriate for judgment on the pleadings, Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974), and directed

---

[2]The hearing officer's decision is reported at 15 M.L.C. 1587 (1989).

[3]Interlocutory relief from a ruling or order of a hearing officer may be sought pursuant to 456 Code Mass. Regs. § 13.03 (1) (1990).

[4]General Laws c. 30A, § 12 (5) (1990), provides as follows:

"Upon the failure of any person to comply with a subpoena issued in the name of the agency and not revoked or modified by the agency as provided in this section, any justice of the superior court, upon application by the agency or by the party who requested that the subpoena be issued, may in his discretion issue an order requiring the attendance of such person before the agency and the giving of testimony or production of evidence. Any person failing to obey the court's order may be punished by the court for contempt."

the entry of a judgment which substantially upheld the commission's order.[5] The city appealed from the judgment. We took the case on our own initiative, and affirm the judgment.

---

[5] The judge ordered the city to produce the following documents to the federation:

"(1) IAD logs and cards covering the period January 1, 1987 through March 22, 1988.

"(2) The IAD files, if any, of closed investigations of officers promoted to lieutenant in March, 1988; and summary sheets, if any, of any open IAD investigations of officers promoted to lieutenant in March, 1988.

"(3) The IAD files, if any, of officers promoted to sergeant in January, 1986, as well as the IAD files of any officers promoted to sergeant between January, 1986 and March 22, 1988.

"(4) Broderick's IAD file(s) from the date of his employment as a Boston Police Officer through March 22, 1988.

"(5) All communications between [the police commissioner] and the [department's] Bureau of Professional Standards concerning Broderick between January, 1986 and March 22, 1988.

"(6) All personnel orders announcing promotions to sergeant between January 1, 1986 and March 22, 1988."

The judgment ordered certain safeguards as to persons referenced or identified in the IAD logs, cards, and files and to comply with the requirements of the criminal offender record information act (G. L. c. 6, § 167 [1990 ed.]), and the rape shield law (G. L. c. 265, § 24C [1990 ed.]). In addition, the judgment directed the following safeguards as to the IAD logs, cards, and files:

"(1) The Federation's attorney (including all persons to whom the attorney-client privilege would be applicable) shall not disclose the contents of the IAD logs, cards, and files to anyone but his client except with the consent of the city or by leave of court;

"(2) The federation's attorney, the Federation and all its representatives (including William Broderick), are not to use the documents for any purpose other than the hearing and directly related proceedings (such as appeals or compliance proceedings) in this case; and

"(3) A code must be substituted for the name of each officer if either party offers any of the logs, cards, or files into evidence."

The Superior Court judge's order differed from the commission's primarily in that it requires the production of communications between the police commissioner and the department concerning Broderick, and pertinent IAD materials, only through March 22, 1988, the date of the alleged discriminatory action. The commission had ordered the production of this material through February 27, 1989, the date of the third subpoena.

1. The city first argues that the commission committed an error of law when it independently reviewed the hearing officer's decision on the city's motions to quash and modify the subpoenas. The city maintains that the issues pertaining to the subpoenas involve evidentiary matters as to which a trier of fact like the hearing officer have traditionally possessed considerable latitude. It maintains that the commission was required to apply an abuse of discretion standard to the hearing officer's decision on the subpoenas. Under such a standard, the city theorizes that the commission would have determined that the hearing officer had not abused her discretion, and, accordingly, the commission should have upheld the hearing officer's order on the subpoenas. The commission rejected these contentions, stating that in the past it had "not limited its review of [a] hearing officer's action [concerning subpoenas] to considering whether the hearing officer abused his or her discretion." The commission concluded that its rules and regulations required an independent evaluation by it as to whether a subpoena, issued on behalf of and enforceable by the commission, should be quashed or modified. We accept the commission's position on this point.

An agency's construction of its own rules and regulations "is one to which considerable deference is due." *Northbridge* v. *Natick*, 394 Mass. 70, 74 (1985). *Therrien* v. *Labor Relations Comm'n*, 390 Mass. 644, 650 (1983). So long as the agency's interpretation of its regulations and statutory mandate is rational, and adhered to consistently, it should be respected. *Northbridge v. Natick, supra.* This is particularly so with respect to internal agency matters such as the issuance of subpoenas directed at the gathering of evidence for an agency proceeding when, as is the case here, there is no formal prehearing discovery of the type or scope that is ordinarily available in a judicial action. An examination of pertinent statutory provisions, and commission regulations, implementing its statutory authority, satisfies us that the commission could rationally conclude that it retained the authority independently to decide the issues pertaining to quashing or modifying subpoenas issued by a hearing officer

appointed by it in the course of an adjudicatory proceeding
concerning a complaint over which it possesses final auth-
ority.

General Laws c. 150E, § 11 (1990 ed.), authorizes the
commission, in its discretion, to order that a prohibited prac-
tice hearing "be conducted by a member or agent of the
commission."[6] The assignment to the hearing officer in this
case was made by the commission pursuant to that authority.
The hearing officer was to determine whether a prohibited
practice had been committed and, based on that decision, to
order appropriate relief. G. L. c. 150E, § 11.

Neither G. L. c. 150E, nor the commission's enabling stat-
ute, G. L. c. 23, § 9O (1990 ed.), confers authority on the
commission to issue subpoenas. That power derives from
G. L. c. 30A, the general statute governing practice before
the Commonwealth's administrative agencies, which in § 12
thereof authorizes agencies to issue subpoenas in adjudica-
tory proceedings. Section 12 (1) also permits the agency to
delegate the power to issue subpoenas to "any person . . .
designated by the agency for such purpose."

Pursuant to this latter power, the commission has adopted
regulations which permit delegation to a hearing officer of
the authority to issue subpoenas and to rule on motions to
vacate or modify subpoenas in the first instance. 456 Code
Mass. Regs. § 13.12 (5)(b) (1990) ("[u]pon receipt of a mo-
tion for revocation or modification of a subpoena, the hearing
officer or the [c]ommission shall rule upon the motion. The
[c]ommission may defer ruling on the motion pending desig-
nation of a hearing officer"). The commission's regulations
further provide that, prior to the completion of a hearing, a
party may appeal to the full commission from any interlocu-
tory ruling or order of a hearing officer, including a ruling on
a motion to vacate or modify a subpoena. 456 Code Mass.
Regs. § 13.03 (1990).

---

[6]The "member or agent" is generally referred to in commission regula-
tions as the "hearing officer." 456 Code Mass. Regs. § 11.07 (1990).

There is nothing in G. L. c. 30A, G. L. c. 150E, or the commission's regulations, as outlined above, which requires the commission to give deference to a hearing officer's ruling on the validity or scope of a subpoena or which limits the commission's review of such a ruling, either on an interlocutory basis, or on full review of the hearing officer's final decision. Rather, the statutory and regulatory scheme which governs the commission's work indicates that, while the commission may delegate to a hearing officer in the first instance the authority to deal with issues pertaining to subpoenas, including motions to vacate or to modify them, the commission itself retains the ultimate authority to make an independent determination of the issues. See A. Cella, Administrative Law and Practice § 349 (1986) (as to matters handled by a hearing officer on its behalf, "[t]he agency, board, or commission [appointing the hearing officer] retains all ultimate authority").

The commission's decision independently to deal with the issues raised by the subpoenas, in this case whether the evidence sought related with reasonable directness to a matter in question, and whether the subpoenas were unreasonable and oppressive, see G. L. c. 30A, § 12 (4) (1990 ed.), was consistent with its prior decisions.[7] In *Weymouth & IBPO, Local 630*, 16 M.L.C. 1168 (1989), and *Beverly & Beverly*

---

[7]The commission's practice of independently reviewing a hearing officer's rulings on motions to modify or quash subpoenas appears to comport with practice before the National Labor Relations Board (board). The board also delegates authority in the first instance to an administrative law judge presiding over an unfair labor practices hearing to rule on a motion to revoke subpoenas filed while a hearing is in progress. 29 C.F.R. § 102.31 (b) (1992). If a party moving for revocation or modification of the subpoena is aggrieved by the administrative law judge's ruling, that party may request that the issue be made part of the record transmitted to the board for appeal purposes. *Id.* The board's regulations also provide for interlocutory review of a ruling concerning a subpoena by special permission of the board. 29 C.F.R. § 102.26 (1992). In practice, if a substantial question concerning the scope of a subpoena is raised, the board grants leave to appeal. *NLRB* v. *Duval Jewelry Co. of Miami*, 357 U.S. 1, 6 (1958). The ultimate decision "on a motion to revoke [a subpoena] is reserved to the Board." *Id.* at 7. See *Valley Camp Coal Co. & United Mine Workers of Am., Local 340-15A*, 265 N.L.R.B. 1683 (1982) (board re-

*Police Benevolent Ass'n*, 10 M.L.C. 1359 (1984), the commission independently reviewed the legal issues raised in the hearing officers' rulings on motions to quash subpoenas.[8]

The commission's policy of independent review also harmonizes with the general principles concerning an agency's responsibility to review its hearing officer's rulings expressed in *Vinal* v. *Contributory Retirement Appeal Bd.*, 13 Mass. App. Ct. 85 (1982). In that case, the Appeals Court concluded that a hearings officer's findings resting on a resolution of credibility questions are entitled to substantial deference. *Id.* at 101. Other findings are entitled only to "some deference," *id.*, a standard consistent with the independent review of the subpoenas undertaken by the commission in this case.

2. We turn to the city's arguments that the judge improperly enforced (with modifications) the commission's orders on the subpoenas.

(a) *IAD log and cards.* The city maintains that the information in the subpoenaed IAD logs and cards should not be produced because the information is excepted from disclosure under G. L. c. 4, § 7, Twenty-sixth (*f*) (1990 ed.).[9] The judge properly upheld the commission's ruling that the public

---

views merits of party's motion to revoke subpoena and affirms administrative law judge's denial of motion).

[8] Citing *Quincy & Quincy City Employees Union, H.L.P.E.*, 14 M.L.C. 1167 (1987), the city maintains that the commission previously adopted, and is therefore bound to retain, an abuse of discretion standard for reviewing its hearing officers' rulings on motions to modify or quash subpoenas. The decision in *Quincy* was issued not by the commission but by a hearing officer. It contains a footnote stating that the commission had denied an interlocutory appeal from the hearing officer's ruling denying issuance of a subpoena in part because "no reasons were given . . . as to how the Hearing Officer allegedly abused her discretion in declining to issue the requested subpoenas." *Id.* at 1167 n.1. This statement by a hearing officer does not demonstrate that the commission routinely has applied an abuse of discretion standard in reviewing interlocutory appeals on motions to modify or quash subpoenas.

[9] Clause Twenty-sixth (*f*) of the definition of public records that are subject to inspection pursuant to G. L. c. 66, § 10 (1990 ed.), exempts "investigatory materials necessarily compiled out of the public view by law enforcement or other investigatory officials the disclosure of which materials

record law and its exceptions do not restrict the commission's power to subpoena documents pursuant to G. L. c. 30A, § 12, in connection with a complaint before it. See *Town Crier, Inc.* v. *Chief of Police of Weston*, 361 Mass. 682, 691 (1972) ("All police records . . . whether or not they are public records, are subject to being summoned before a proper tribunal in accordance with established rules of law"). See also *Town of Weymouth & IBPO*, 16 M. L. C. 1168, 1171 (1989).

The judge also properly upheld the commission's rejection of the city's argument that the order to produce the entire IAD logs and cards was overbroad and irrelevant. The IAD logs are a chronological list of all complaints received against officers. Separate index cards are made for each officer on the list. The commission was justified in finding that there was no practical way to limit the production of the logs and cards to the thirty-three sergeants promoted to lieutenant without jeopardizing the federation's right to verify the number of complaints (if any) filed against those officers. The requested discovery was also confined to a specific time period (January 1, 1987, through March 22, 1988), which was relevant to the case.

(b) *IAD files.* The judge correctly concluded that the commission had properly ordered the production of the IAD files of various lieutenants, sergeants, and Broderick. See note 5, *supra.* The purpose of the federation's request for the IAD files was to compare the number and nature of complaints against officers who were promoted with any complaints lodged against Broderick. Because the city presented evidence that IAD information was considered by the city when making promotional decisions, IAD files were relevant to a comparison of the personnel qualifications of officers promoted to sergeant and lieutenant, and to the ultimate issue whether Broderick was subject to discrimination when bypassed for promotion on March 22, 1988. "The court[ ], of

---

would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest."

course, should not assist the [plaintiff] to obtain the production of plainly irrelevant records, or improperly to invade witnesses' privacy to the extent that privacy is constitutionally protected." *Finance Comm'n of Boston* v. *McGrath*, 343 Mass. 754, 761 (1962). "Nevertheless, the [plaintiff] may not be denied the power to investigate fairly, by comprehensive but reasonable methods," matters which relate to its claim of unlawful discrimination. *Id.* at 762.

3. Finally, the city argues that the safeguards imposed by the judge as to the IAD logs, cards, and files were insufficient to protect the privacy and confidentiality interests at stake. See note 5, *supra*. The judge had discretion to determine the nature and extent of the safeguards. We are satisfied that the safeguards are adequate.[10]

<em>Judgment affirmed.</em>

---

[10]The safeguards included one that limited disclosure by the federation's attorney of any contents of the IAD's logs, cards, and files only to his "client" except with the consent of the city or by leave of court. The reference to "client" by the judge undoubtedly is meant as a reference to the few members of the federation (such as its officers or executive board) who are directly involved in the case and not as a reference to the federation's membership as a whole.