Flannery, J.
The plaintiff in this case (Karalekas) seeks review and reversal of a decision by the defendant Board (Board) denying her licensure as a speech-language pathologist within the meaning of M.G.L.c. 13, §§85-87 and c. 112, §§138-147. She needs the license in order to be employed by the New Bedford public schools as a pathologist, and the nub of the controversy is whether the Board erroneously denied her the benefits of “grandfathering” provisions in the licensing scheme.[1] The parties disagree on many aspects of this controversy, but a number of their disagreements are not central to the case, and I shall not try to resolve them all.
Before it addresses the merits of plaintiffs contentions, the Board urges that this court lacks jurisdiction because the certiorari action is time-barred, c. 249, §4. The Board denied her licensure in August of 1985 and she sued in May of 1992, well beyond the 60-day certiorari deadline. The plaintiff answers variously that she was timely because her action is mandamus or declaratory judgment, or that her certiorari claim (October 10, 1992) was made within sixty days of the Board’s final denial of her application (August 26, 1992).
The Board is correct that the action is certiorari, but the plaintiff is correct that she was timely. The Board acted in 1985, but the dealings between the parties about the plaintiffs eligibility went on continually into 1992 and the plaintiff continued her employment on waivers during that time. The Board’s final denial to her came in April of 1992. She brought suit in May and her later certiorari amendment related back to within sixty days of the denial.[2] Therefore, the matter is before me for certiorari review, i.e, whether there is an error of law that is apparent on the record and materially affects the rights of the plaintiff.
As indicated above, there are many factual (as well as legal) disagreements between the parties, but their principal disagreement is whether Karalekas qualified for the waiver provisions, i.e., “grandfather” clauses, set forth in the Licensing Act (c. 112, §144) and regulations promulgated thereunder, 260 CMR 3.06. The Board acted to waive certain education and expe *540 rience requirements for the plaintiff, so the precise disagreement boils down to whether the Board committed material legal error in its application of 260 CMR 3.06(4)(5) to the plaintiff. Those subsections provide in pertinent part:
(4) The defendant must prove to the Board by a notarized letter from his/her supervisor or employer . . . that he/she was actively engaged as a speech-language pathologist as defined in 260 CMR 2.01 on January 6, 1983. A job description detailing that employment must be submitted by the applicant.
(5) For purposes of 260 CMR 3.06, an applicant shall be deemed to be “actively engaged” in the practice of speech-language pathology if he/she has been engaged in such profession in the Commonwealth for a minimum of one (1) continuous year between January 1,1977 and January 5,1983 or was employed on January 6, 1983.
The plaintiff initially applied to the Board for a license in March of 1984. Administrative Record 91 (AR). She would have been wavier-eligible if she had worked as a speech-pathologist for a continuous year between January 1, 1977 and January 5, 1983, or if she was so employed on January 6, 1983. In order to qualify under either waiver alternative, the applicant was required to submit certain supporting documentation. The plaintiff did not then claim either the continuous year of practice during 1977 to 1983 or employment on January 6, 1983.[3]
That application was followed by a long series of communications between Karalekas and the Board about her status and eligibility for licensure by waiver. The plaintiff sent to the Board a number of items from herself and others about her qualifications, and the Board kept reiterating that it needed proof of her employment, either the one continuous year or on January 6, 1983, with employer verification and job description. The materials sent by Karalekas or on her behalf were typically off the mark, either as to dates or what it was that she was “actively engaged” in doing. See, e.g., AR 77, 82, 95, 97. Finally, in August of 1985 and again in August of 1986 the Board decided that Karalekas did not qualify under the grandfathering provisions. AR 78, 83.
It appears that the plaintiff continued to work in the New Bedford public schools, perhaps on local waivers. Correspondence with the Board about her status resumed after there were complaints about New Bedford’s use of unlicensed personnel (AR 63), and in 1990 the Board found her to be practicing without a license. The later correspondence did not change the 1985-1986 decision, however, and this action followed in May of 1992.
The plaintiff contends that the Board committed a material mistake of law when it ruled that she was not eligible for waiver as one who was “actively engaged as a speech-language pathologist ... on January 6, 1983.” 260 CMR 3.06(4)(5). The Board maintains, as it did initially (AR 22, 73), that the plaintiffs work role on January 6, 1983, was not at the professional level meant by that exemption. Those regulations were intended to protect practicing pathologists who were employed in their jobs on that date. The plaintiff, says the Board (AR 22), was “a supervised non-salaried service provider” on January 6 and thus ineligible for the exemption. The plaintiff rejoins that she was “actively engaged as a speech-language pathologist” (260 CMR 3.06(4)) on that date, as evidenced in her supporting materials, and that the Board’s reference to “non-salaried” (AR 22) is an erroneous irrelevancy.
The record evidence about January 6, 1983 (AR 77, 92) is that the plaintiff was doing speech-language work “under the direct supervision of a certified speech-language pathologist” at a Children’s Rehabilitation Center in New Bedford. That work appears to have been a sequel or continuation of a clinical internship at that facility, from September through December 30, 1982 (AR97).[4] The plaintiffs position is that her work satisfied 260 CMR 3.06(4). The Board says that aide-type job fell short of its legitimate definition of “actively engaged” in subsections 3.06(4) and (5).
The parties agree, and so do I, that the Board’s interpretation and application of the regulations are the proper focus of the present inquiry. They were promulgated pursuant to the underlying legislation (Section 3 of Chapter 666 of the Acts of 1982), which provides broadly for Board waiver of the examination requirements “for applicants who are actively engaged in the practice of speech-language pathology . . .’’
The plaintiff acknowledges that courts defer to agencies’ interpretations of their own regulations, Boston Police Superior Officers Federation v. Boston, 414 Mass. 458, 462 (1993), but she urges that agency interpretations that contradict or exceed their governing statutes are void, Boston Neighborhood Taxi Association v. Department of Public Utilities, 410 Mass. 686, 692 (1991). In this case, her argument runs, the Board erred when it added “employed” or “salaried” to the statutory term “actively engaged in the practice of speech language pathology,” which resulted in the disqualification of Karalekas.
The plaintiffs contention has merit. Surely, it would be wrong to say that a physician who is treating the poor gratis is not actively engaged in the practice of her profession merely because she is not salaried. A lawyer who represents indigent defendants in the public interest without salary is also actively engaged. In sum, the statute refers to “applicants who are actively engaged in the practice of speech-language pathology,” and the Board may not, the plaintiff argues, change the statute by inserting the words “for pay” in an implementing regulation.
On the other hand, the Board’s enabling legislation gives it broad powers with respect to qualifying and licensing applicants. G.L.c. 13, §86; c. 112, §139. The *541 Board is composed of a majority of practicing pathologists and audiologists and its interpretation of the aims and meaning of its statute is entitled to judicial respect. The Board is empowered reasonably to determine, for grandfathering and other purposes, who are full-fledged professionals and who are not yet. Similarly, within the scope of its expertise the Board may use rational and neutral criteria for measuring professionalism.
In this case, the Board construed the waiver provision to be protective of practicing professionals, using employment as a criterion, but not protective of persons who, on January 6, 1983, were in a pre-profes-sional, unlicensed aide or intern status.
I can not say that the Board’s decision about the plaintiff was unfaithful to the letter or spirit of its statute or regulations. Accordingly, judgment shall enter for the defendant Board and the Complaint will be dismissed.

 is undisputed that the plaintiff has tried unsuccessfully to qualify for a license under the statute’s alternative requirements. The Board waived the requirement that applicants have a master’s degree, but the plaintiffs scores on the required national examination were well below the acceptable minimum on three tries.

 Board also argues that the plaintiff did not apply for licensure until after the January 6, 1984 deadline, but the plaintiff correctly points out that she applied for licensure by waiver well before the Board’s extended deadline of August 1, 1985.

 January 6 employment section on the application form was left blank (AR 92-93). The plaintiff indicated that she had engaged in “supervised professional practice” from 9/10/82 to 2/10/83, but certain supporting documentation required on the application form was not sent.

 The particulars of the plaintiffs role(s) are not entirely clear because the job description and employer verification materials seem incomplete (although see AR 97, 98), an omission which the Board criticizes but does not rely upon. Also, the record is not easy to interpret because it includes materials about the plaintiffs activities at times other than January 6, 1983; see, e.g., AR 82, 95, 97.