Box Pond Association & others[1] vs. Energy Facilities
Siting Board & another[2]
(and a consolidated case).

Suffolk. September 6, 2001. - November 23, 2001.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Energy Facilities Siting Board. Public Utilities,* Electric company, Judicial review. *Environment,* Noise. *Administrative Law,* Agency's interpretation of statute, Evidence, Hearing. *Subpoena. Witness,* Expert. *Evidence,* Administrative proceeding, Hearsay.

Discussion of the statutory and regulatory background for review by the Energy Facilities Siting Board of electric generating facilities. [409-410]

Statement of the standard of review before this court of a petition by a party aggrieved by a decision of the Energy Facilities Siting Board under G. L. c. 25, § 5. [412]

In administrative proceedings before the Energy Facilities Siting Board (board) to consider a petition to construct and operate an electric generating facility, there was no abuse of discretion in the hearing officer's refusing to grant an intervener's request for a six-week extension to retain a noise expert, when another intervener withdrew its noise expert two days before he was scheduled to testify on the noise impact of the electric generating facility [412-415]; nor did the hearing officer violate the board's regulations or abuse her discretion by revoking a subpoena in accordance with the procedures of G. L. c. 30A, § 12, and 980 Code Mass. Regs. § 1.05, compelling the noise expert to testify at the hearing [415-418]; further, the board did not err by giving the noise expert's testimony "only limited weight" and considering it only "for the sake of completeness" [418].

In administrative proceedings before the Energy Facilities Siting Board (board) to consider a petition to construct and operate an electric generating facility, the board did not err in its compliance decision in refusing to consider certain testimony of a noise expert retained by interveners, where the testimony was unrelated to the scope of the compliance proceeding that had been made more narrow by the board's final decision and was merely "an attempt to relitigate issues decided in the underlying proceeding," where the board properly applied its statutory mandate requiring that plans for a proposed facility "minimize the environmental impacts consistent with the minimization of costs," and where the interveners failed to show that, in seeking to reopen the proceedings, the material they sought to offer was sufficiently authenticated. [418-421]

On a motion by interveners to reopen proceedings before the Energy Facilities

[1] Concerned Citizens of Bellingham and Joan Eckert.
[2] IDC Bellingham, LLC, intervener.

Siting Board (board) in order to take additional evidence on the commercial availability of new air pollution control technology, there was no abuse of discretion in the hearing officer's denying the motion, where the hearing officer recognized the board's statutory mandate to minimize environmental impacts and costs, and concluded that the "new evidence," consisting of a two-page industry press release, was irrelevant. [421-423]

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on January 27, 2000, and September 22, 2000, respectively.

After consolidation, the case was reported by *Greaney*, J.

*Kenneth L. Kimmell* (*Cristin L. Rothfuss* with him) for the plaintiffs.

*Pierce O. Cray*, Assistant Attorney General, for the defendant.

*John A. DeTore* (*Maribeth Ladd & Alan K. Posner* with him) for the intervener.

COWIN, J. IDC Bellingham, LLC (IDC), filed a petition pursuant to G. L. c. 164, § 69J¼, with the Energy Facilities Siting Board (board) to construct and operate a net nominal 700-megawatt natural gas-fired, combined-cycle, electric generating facility on a 156-acre site in Bellingham.[3] IDC also acquired rights to purchase a sixty-five acre parcel of land in the town of Mendon (Mendon) abutting the Bellingham parcel, which IDC stated would be maintained as an undeveloped buffer between the facility and the neighboring businesses and residences in Mendon. After extensive hearings, IDC's petition was approved. Box Pond Association (BPA), Concerned Citizens of Bellingham (CCOB), and Joan Eckert (Eckert), interveners in the proceedings (collectively, interveners), appealed to the single justice, raising several issues concerning the procedural conduct of the hearings.[4] The single justice reserved and reported the matter to this court. We affirm the decision of the board.

1. *Statutory and regulatory background.* The board's review of electric generating facilities is governed by G. L. c. 164,

---

[3]In its original petition, IDC stated that the proposed facility would generate 1,035 megawatts and would use oil as a backup fuel. By a letter dated October 28, 1998, IDC informed the Energy Facilities Siting Board (board) that the output of the proposed facility was being reduced to 700 megawatts and that it had eliminated oil as a backup fuel.

[4]Because at least one intervener has standing to pursue this appeal, we need not address the standing of any other intervener.

§§ 69H and 69J$\frac{1}{4}$. The board is to perform its functions "so as to provide a reliable energy supply for the commonwealth with a minimum impact on the environment at the lowest possible cost." G. L. c. 164, § 69H. The board is required to approve a petition to construct a generating facility within one year of the filing date if the petition meets the statutory requirements. G. L. c. 164, § 69J$\frac{1}{4}$.

The board's review of generating facilities is an adjudicatory proceeding "under the provisions of chapter 30A," the Massachusetts Administrative Procedure Act, see G. L. c. 164, § 69J$\frac{1}{4}$, and the board has adopted rules for the conduct of these proceedings. 980 Code Mass. Regs. §§ 1.00 et seq. (1993). Pursuant to these rules, the hearing officer is authorized to hold hearings on petitions filed under G. L. c. 164, § 69J$\frac{1}{4}$, and is delegated broad authority in governing such proceedings. The hearing officer may issue subpoenas, administer oaths, and in general determine the course and conduct of the hearings. 980 Code Mass. Regs. § 1.04. Other than in circumstances not relevant here, the hearing officer proposes a tentative decision for the board's consideration. 980 Code Mass. Regs. § 1.06(3). The board renders a final decision "after considering the tentative decision and all timely-filed comments and supporting arguments." 980 Code Mass. Regs. § 1.06(5).

2. *Procedural background.* IDC filed its petition with the board on November 18, 1997. A public hearing was held in Bellingham on March 11, 1998. Numerous individuals and entities were permitted to intervene in the proceedings, including the petitioners in the present appeal. See G. L. c. 30A, § 10; 980 Code Mass. Regs. § 1.05(2) and (3).

Thirteen days of evidentiary hearings were conducted between April 14 and May 26, 1999.[5] The board issued a final decision on December 21, 1999, approving IDC's petition subject to specific conditions. Aware of the possibility that IDC's choice of turbine might change at a later date, the board

---

[5]The tentative and final decision both state that "the board" conducted the evidentiary hearings. As the transcript of said hearings indicates, however, these evidentiary hearings were held before the hearing officer who obviously uses the term "the board" in the tentative decision to refer to findings and rulings she has made on behalf of the board. See the tentative and final compliance decisions, *infra* at 411-412.

in its final decision directed IDC to submit information about any change in turbine as a "compliance filing." Such a filing would enable the board to determine whether the change in turbine warranted new discovery and hearings. The interveners appealed from the final decision pursuant to G. L. c. 25, § 5, as permitted by G. L. c. 164, § 69P.

After the final decision was issued, IDC submitted a compliance filing to the board indicating that, in place of two Siemens Westinghouse turbines, it intended to use two General Electric turbines. The main reason for the turbine change was IDC's inability to purchase the Siemens Westinghouse turbines with manufacturer guarantees that the turbines would meet the proposed facility's emissions limits. IDC also stated that in addition to changing to General Electric turbines, it would reconfigure the proposed electric generating facility so that the net nominal electrical output of the facility would be reduced from 700 megawatts to 525 megawatts.

The hearing officer issued a ruling on March 31, 2000, defining the scope of the compliance proceeding and establishing a procedural schedule. After four days of evidentiary hearings, the board issued a final decision on September 12, 2000, again approving IDC's petition subject to specific conditions. The interveners appealed from the compliance decision pursuant to G. L. c. 25, § 5, as permitted by G. L. c. 164, § 69P. IDC's motions to intervene in both appeals were allowed by the single justice who consolidated the cases and reserved and reported the appeals to the full court.

On appeal, the interveners argue that (1) the hearing officer abused her discretion by refusing to grant intervener Eckert's request for a six-week extension to retain a noise expert, when allied intervener Mendon withdrew its noise expert, Michael D. Theriault (Theriault), two business days before he was scheduled to testify on the noise impact of the power plant; (2) the hearing officer violated the board's regulations and abused her discretion by revoking a subpoena compelling Theriault to testify at the hearing; (3) the board erred by giving Theriault's testimony "only limited weight" and considering it only "for the sake of completeness"; (4) the board erred in the compliance decision in refusing to consider the testimony of Gregory C. Tocci (a ·

second noise expert retained by the interveners); and (5) the hearing officer abused her discretion in denying the interveners' motion to reopen the proceeding to take additional evidence on the commercial availability of new air pollution control technology.

3. *Standard of review.* Any party aggrieved by a decision of the board may seek judicial review in the Supreme Judicial Court. G. L. c. 164, § 69P. G. L. c. 25, § 5. "Our review of petitions under G. L. c. 25, § 5, is limited, although not perfunctory." *Stow Mun. Elec. Dep't* v. *Department of Pub. Utils.*, 426 Mass. 341, 344 (1997), quoting *Wolf* v. *Department of Pub. Utils.*, 407 Mass. 363, 367 (1990). We shall uphold the board's decision unless it is demonstrated that "it is based on an error of law, unsupported by substantial evidence, arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." *Stow Mun. Elec. Dep't* v. *Department of Pub. Utils.*, *supra*, citing *Massachusetts Inst. of Tech.* v. *Department of Pub. Utils.*, 425 Mass. 856, 867-868 (1997). The plaintiffs have "the burden of proving such error. This burden is a heavy one. We give great deference to the [board's] expertise and experience in areas where the Legislature has delegated to it decision making authority . . . ." *Wolf* v. *Department of Pub. Utils.*, *supra*, quoting *Costello* v. *Department of Pub. Utils.*, 391 Mass. 527, 533 (1984).

4. *Rulings concerning Mendon's noise expert.* The board is required to evaluate the noise impact from proposed generating facilities to determine whether the plans for the facility "minimize the environmental impacts consistent with the minimization of costs." G. L. c. 164, § 69J$^{1}/_{4}$. The board reviews the noise impacts of a proposed facility for general consistency with applicable government regulations, including the Department of Environmental Protection Policy 90-001 (Jan. 16, 1990), which limits increases from new noise sources to ten decibels (dBA). Moreover, the board considers the significance of expected noise increases which, although lower than ten dBA, may adversely affect existing residences or other sensitive receptors.

Mendon retained an expert in acoustics, Theriault, who conducted an ambient sound level survey at two residential

locations in Mendon. Theriault concluded in his prefiled testimony[6] that the proposed facility did not meet regulatory noise standards. Two business days before Theriault was scheduled to testify at the evidentiary hearings, IDC and Mendon entered into a settlement pursuant to which Mendon agreed to withdraw as an intervener and to withdraw all of Theriault's prefiled testimony. Many of the interveners' claims stem from the fact that they had been relying on Theriault's testimony and were left without such an expert by Mendon's unexpected withdrawal from the proceedings. We conclude that each of the challenges lacks merit.

a. *Six-week extension request.* When Mendon withdrew, Eckert filed a request for a six-week extension to retain a noise expert to provide the type of measurements and analyses previously furnished by Theriault. The request was denied. The interveners claim that the hearing officer's denial of the request for an extension was arbitrary and capricious, and failed to take into account relevant facts.

The decision whether to grant a motion to continue lies within the sound discretion of the hearing officer or the board. 980 Code Mass. Regs. § 1.02(6). See *Foote* v. *Process Equip. Co.*, 353 Mass. 755 (1967). Cf. *Commonwealth* v. *Super*, 431 Mass. 492, 496-497 (2000). The refusal to grant a continuance will not constitute error absent an abuse of that discretion. *Elbar Realty, Inc.* v. *Shapiro*, 342 Mass. 276, 278, appeal dismissed, 368 U.S. 802 (1961), and cases cited.

The interveners contend that Eckert was misled by the hearing officer into relying on Mendon's noise expert because the hearing officer had urged the parties not to duplicate efforts. The record does not support this contention. The hearing officer, in denying the six-week extension, stated: "To promote administrative efficiency, parties were encouraged in this proceeding not to duplicate discovery. However, at no point in time were par-

---

[6]The hearing officer may, as in this case, set a schedule requiring that the testimony of all witnesses in a proceeding be submitted in advance of the evidentiary hearings. 980 Code Mass. Regs. § 1.05(10) (1993). This written prefiled testimony is admissible when the witness adopts it under oath on the record at the hearing and the witness is available for cross-examination. See *Planning Bd. of Braintree* v. *Department of Pub. Utils.*, 420 Mass. 22, 30-31 (1995).

ties asked to refrain from sponsoring witnesses on similar topics." This statement by the hearing officer is entitled to some deference as her recollection of her instructions. To the extent the interveners seek relief from the normal requirement of presenting their own witnesses, it was incumbent on them to make it a matter of record that they were encouraged to do so by the hearing officer. The interveners refer to memoranda or statements they claim exist to support their interpretation of the hearing officer's statements on this subject. They have not directed us to any such documents in the record. We may not act on unsupported assertions, see *Demoulas* v. *Demoulas*, 432 Mass. 43, 59 (2000), citing *Polaroid Corp.* v. *Rollins Envtl. Servs. (NJ), Inc.*, 416 Mass. 684, 696 (1993), and are left with only the hearing officer's statement of her instructions to the parties on the matter and her interpretation of those instructions. In the absence of evidence that would discredit the hearing officer's recollection of the events, we accept the hearing officer's version and give it its plain and ordinary meaning: that the parties were encouraged not to duplicate discovery. Discovery is not the presentation of evidence or the calling of witnesses. We have been directed to nothing in the record from the briefs or from the interveners at oral argument that would establish any commitment to grant continuances when witnesses were withdrawn from the proceedings.

The interveners further claim that the hearing officer's denial of the extension request was arbitrary and capricious because she had granted IDC's extensions that delayed the case for several months and then denied Eckert a six-week extension that would not have delayed the case. Although the hearing officer did grant IDC several extensions that delayed the original procedural schedule, these extensions were necessitated by IDC's filing of significant project changes. These project changes reduced the environmental impacts of the facility, and continuances were granted so that IDC could provide all available information about the changes before the case proceeded. To do otherwise would have been a waste of all parties' resources given the significance of the changes. (The hearing officer treated the parties evenhandedly and granted the interveners an extension of five weeks to submit their prefiled testimony following IDC's submission of its updated discovery responses.)

Further, the hearing officer was confronted with a statute requiring the board to either approve or reject the petition to construct a generating facility within one year from the date of filing. G. L. c. 164, § 69J¼.[7] IDC had filed its petition to construct the power generating facility on November 18, 1997. The board could not comply with the one-year statutory time frame in this case due to the scheduling delays caused by IDC's project changes. Evidentiary hearings were eventually scheduled to conclude, and did conclude, on May 26, 1999. Thus, the one-year deadline had already passed on May 15, 1999, the date on which Eckert filed her six-week extension request, and the hearings were due to end only eleven days later.

Given the lack of record support for the requested delay and the time requirement of G. L. c. 164, § 69J¼, the hearing officer acted within her discretion in denying Eckert the extension. Unlike the delays afforded IDC, there was no showing that Eckert's delay "would measurably contribute to the resolution of the case." *Commonwealth* v. *Miles*, 420 Mass. 67, 85 (1995).[8]

b. *Quashing of Theriault's subpoena.* The interveners next argue that the hearing officer erred in quashing a subpoena that had been issued to Theriault. The board claims that the interveners cannot raise this argument as the subpoena in question was issued at the request of one Kathleen Johnson,[9,10] an intervener at the hearings, but not a party to the present appeal. At Johnson's request, the hearing officer had issued a subpoena to Theriault when Mendon withdrew from the proceedings. When IDC and Theriault objected to the subpoena, the hearing officer revoked it. Assuming without deciding that the interveners have standing to raise this issue, we address their argument.

---

[7]This language is directory and not mandatory. See *Kiss* v. *Board of Appeals of Longmeadow*, 371 Mass. 147, 157-158 (1976).

[8]The hearing officer did in fact permit Theriault's prefiled testimony to remain in the evidentiary record, and the board considered his testimony to some extent. See Part 4(c), *infra*.

[9]The board refers to the subpoena to Theriault as having been requested by "the Johnsons." Other documents in the record indicate that the subpoena was requested only by Kathleen Johnson.

[10]The hearing officer originally issued the subpoena to Theriault because she believed that G. L. c. 30A gave her no discretion to deny it. But she interpreted the statute as permitting her to vacate a subpoena if a witness who had been summonsed so petitioned her.

The interveners argue that the hearing officer violated the board's procedural regulations by failing to give Johnson or any other party the opportunity to be heard before granting the motion to quash Theriault's subpoena. The interveners maintain that the board's regulation governing motions, 980 Code Mass. Regs. § 1.04(3)(b), (c), required a seven-day opportunity for opposition to a subpoena to be filed before a ruling could be made.

The hearing officer revoked Theriault's subpoena in accordance with the subpoena procedures of G. L. c. 30A, § 12, and 980 Code Mass. Regs. § 1.05, which do not require a formal opposition period. An agency's interpretation of its own regulation and statutory mandate will be disturbed only "if the 'interpretation is patently wrong, unreasonable, arbitrary, whimsical, or capricious.' " *TBI, Inc.* v. *Board of Health of N. Andover*, 431 Mass. 9, 17 (2000), quoting *Brookline* v. *Commissioner of the Dep't of Envtl. Quality Eng'g*, 398 Mass. 404, 414 (1986). See *Boston Police Superior Officers Fed'n* v. *Boston*, 414 Mass. 458, 462 (1993). "This is particularly so with respect to internal agency matters such as the issuance of subpoenas directed at the gathering of evidence for an agency proceeding . . . ." *Id.*

The authority to issue subpoenas derives from G. L. c. 30A. Section 12 authorizes agencies to issue subpoenas in adjudicatory proceedings, *id.* at 463, and, pursuant to § 12 (4), an agency may vacate a subpoena "[a]fter such investigation as the agency considers appropriate," without a formal opposition period or other hallmark of motion practice. The board's regulation governing subpoenas follows the statutory standard. See 980 Code Mass. Regs. § 1.05(1)(b). The hearing officer properly applied the procedures governing subpoenas as opposed to the more general motion practice provisions.

Moreover, the interveners' substantial rights were not prejudiced by the claimed procedural missteps in quashing Theriault's subpoena because Johnson was fully heard on the merits of quashing Theriault's subpoena. Cf. *Martorano* v. *Department of Pub. Utils.*, 401 Mass. 257, 262-263 (1987) ("[t]here must be some showing of prejudice before an agency's disregard of its rules may constitute reversible error"). After the hearing officer

quashed the subpoena, Johnson requested a review and hearing thereon. IDC and Theriault filed separate oppositions to the motion and Johnson submitted a lengthy reply. The hearing officer then issued a detailed ruling on the motion to review. Johnson, therefore, had a full opportunity to be heard on the subpoena issue, rendering moot any objection to the procedures used in considering the original request to quash.

In regard to the substance of the ruling, the subpoena issue is in large part a variation of the six-week extension issue. Once the extension had been denied (and we have determined that such a ruling was not an abuse of discretion), the hearings ended on May 26, 1999. The issuance of the subpoena would, in effect, have prolonged the hearings and been in effect the equivalent of granting the extension request. Although the hearing officer ruled that to subpoena Theriault at this juncture would render meaningless the deadline she had ordered for pre-filed testimony, it appears that she had concluded that it would disrupt the entire schedule of the proceedings. As the hearing officer concluded, "Parties have been given a full and fair opportunity to present [their] cases within the parameters established by the procedural schedule. That being the case, there is no compelling reason to allow the testimony of Mr. Theriault at this time in the proceeding."

Apart from the above reasoning, there were other adequate grounds for quashing the subpoena. See *Hawthorne's, Inc.* v. *Warrenton Realty, Inc.*, 414 Mass. 200, 210 n.6 (1993) (we may affirm a judgment on reasons not specifically relied on by the judge). The general rule is that an expert witness, such as Theriault, who has not been retained by the party seeking his testimony, cannot be required to give an opinion already formed unless "necessary for the purposes of justice." *Ramacorti* v. *Boston Redevelopment Auth.*, 341 Mass. 377, 379 (1960), quoting *Barrus* v. *Phaneuf*, 166 Mass. 123, 124 (1896). While there may be exceptions, there has been no showing on this record of any exceptional circumstances for relaxing the general rule. To the extent that there were any unusual circumstances, i.e., the withdrawal of Mendon, the problems for Eckert were self-created. She had relied unreasonably on her belief in a commitment by the hearing officer that is not supported by the record.

See Part 4(a), *supra*. As the interveners have not demonstrated that they were entitled to rely on Mendon's expert, justice does not require that they should be permitted to subpoena him. The hearing officer acted within her discretion in quashing Theriault's subpoena.

   c. *The board's consideration of Theriault's testimony*. The interveners' final argument regarding Theriault's testimony is that the board erred by giving Theriault's prefiled testimony "only limited weight" and considering it only "for the sake of completeness" when rendering its final decision. The interveners contend that, although Theriault's testimony constitutes hearsay, it warranted full consideration because hearsay is admissible in administrative proceedings. See *School Comm. of Brockton* v. *Massachusetts Comm'n Against Discrimination*, 423 Mass. 7, 15 (1996), citing *Embers of Salisbury, Inc.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 526, 530 (1988). The interveners do not challenge the substantive determinations made by the board on Theriault's testimony, but only the fact that the board's decision did not address all of its aspects.

   Despite the interveners' representations to the contrary, the board ultimately considered and reviewed Theriault's prefiled testimony. Although his testimony was unsworn and not subject to cross-examination, "for the sake of completeness and to respond to issues raised by intervenors," the board reviewed his evidence. Because Theriault's testimony was never adopted by him under oath and he was not subject to cross-examination, the board need not have considered it at all. See *Planning Bd. of Braintree* v. *Department of Pub. Utils.*, 420 Mass. 22, 30 (1995). To the extent the board considered the testimony, the interveners received an unwarranted benefit. The fact that the board did not refer to all aspects of Theriault's testimony in its final decision does not indicate that it failed to consider such aspects. An agency need not refer to all evidence in its decision. See *Catlin* v. *Board of Registration of Architects*, 414 Mass. 1, 6 (1992).

   5. *Refusal to consider interveners' expert in the compliance proceeding*. The final decision provided that, "if [IDC's] choice of turbine changes, the [board] will determine, based on the

compliance filing, whether additional discovery and hearings are necessary." The board limited any future proceedings "to the issues raised by the changes to IDC's proposal." When IDC submitted a compliance filing, indicating that it intended to use a different turbine than that originally proposed, the interveners requested a hearing on the matter. The hearing officer issued a ruling establishing a procedural schedule and defining the scope of the compliance proceeding. She limited the compliance proceeding in accordance with the final decision, which had narrowed the scope of any additional proceedings to those issues raised by any changes in IDC's proposal. The hearing officer interpreted this limitation as a directive from the board that any additional hearings not relitigate issues already decided in the underlying proceeding.

The interveners contend that the board erred in excluding the testimony of Gregory C. Tocci of Cavanaugh Tocci Associates, Inc., an expert offered by the interveners to demonstrate ambient noise levels at a specific site in Bellingham. In its compliance decision, the board explained that it refused to consider Tocci's testimony because it was unrelated to IDC's change in turbine and was merely "an attempt to relitigate issues decided in the underlying proceeding." The board acted within its authority.

The board had already decided the proper measure and level of ambient noise in its final decision. Although the interveners argue that the board never determined the proper background ambient noise measurements and left these determinations for the future, this contention is unsupported by the record. In its final decision, the board limited noise increases at the closest residence to the proposed site to five dBA. In doing so, the board implicitly accepted the ambient noise measurements presented by IDC's expert rather than those offered by Theriault. As this court stated in *Tuper* v. *North Adams Ambulance Serv., Inc.*, 428 Mass. 132, 135 (1998), quoting *Stowe* v. *Bologna*, 415 Mass. 20, 22 (1993), "[a] final order of an administrative agency in an adjudicatory proceeding . . . precludes relitigation of the same issues between the same parties, just as would a final judgment of a court of competent jurisdiction."

The board had determined in its final decision that the original

facility would meet the five dBA limit. The interveners contend that it was within the scope of the compliance proceeding, as defined by the board in its final decision, to address whether the facility, with its new turbine, would meet the five dBA limit. This is correct, but it did not reopen the board's earlier findings about existing ambient noise. All parties agreed that the new turbine would actually *reduce* the noise impact of the facility "to levels below those accepted in the underlying decision." Thus, the only way the interveners could show that IDC's proposed turbine would fail to comply with the five dBA limit would be to relitigate the issue of ambient noise, an issue already determined in the initial proceedings.

The interveners contend also that, in declining to consider Tocci's testimony, the board failed to meet its statutory mandate requiring that plans for a proposed facility "minimize the environmental impacts consistent with the minimization of costs." G. L. c. 164 § 64J¼. The compliance decision, however, demonstrates a proper application of this standard. When a decision of an agency is based on the application of the proper standard, this court will not overturn that decision unless it is unsupported by "substantial evidence." *Stow Mun. Elec. Dep't v. Department of Pub. Utils.*, 426 Mass. 341, 344 (1997). The board adequately determined the proper measure of ambient noise in its final decision. We defer to the board's expertise and specialized knowledge in this area, as it was supported by substantial evidence. See *id.*

The interveners argue further that, even if Tocci's testimony were beyond the scope of the compliance proceeding, the board should have reconsidered its final decision on the proper measure of ambient noise and accepted Tocci's testimony as a part of this reconsideration. Although the interveners sought reconsideration, they in fact were attempting to reopen the record to present additional evidence. An agency may reopen a hearing, see 980 Code Mass. Regs. § 1.05(12), but we accord agencies broad discretion in deciding whether to do so, and an agency's refusal to reopen is not disturbed absent an abuse of that discretion. See *Zachs v. Department of Pub. Utils.*, 406 Mass. 217, 227 (1989).

The interveners contend that reopening was appropriate

because of new information concerning the proper techniques for the measure of ambient noise contained in Department of Environmental Protection documents. The board found that these methodological arguments should have been presented in the underlying proceeding. Although we credit the board's implicit decision that there was sufficient information previously available to have informed the interveners of a new methodology, we resolve this issue on another ground. See *Hawthorne's, Inc.* v. *Warrenton Realty, Inc.*, 414 Mass. 200, 210 n.6 (1993). The interveners have not satisfied their burden of showing that this material is sufficiently authenticated for the board to have relied on it. See *Canavan's Case*, 432 Mass. 304, 313 (2000), and cases cited.[11] The "new evidence" was in draft form only and was accompanied by a disclaimer that it was "a draft of material the Department was considering." It was being circulated by the department for "review and comments." The "new evidence" was of questionable reliability, and the board might well have concluded that it could not base findings on it. We discern no abuse of the board's discretion in declining to reopen the proceedings.

6. *Denial of interveners' motion to reopen the proceeding.* The tentative decision issued by the hearing officer on November 22, 1999, proposed that the full board find that a new ammonia-free air pollution technology called SCONOx is not commercially available or feasible for IDC's facility. On December 6, 1999, the interveners filed a motion to reopen the proceedings and allow them to present "previously unknown" information on the SCONOx technology. This "new evidence" consisted of a two-page press release issued by ABB Alstom Power stating that it would guarantee and sell the SCONOx technology. The hearing officer declined to reopen the proceedings on the basis of this press release. As stated above, we do not reverse an agency's decision denying the reopening of a hearing unless there was an abuse of discretion or other error of

---

[11]Although agencies such as the board need not observe the rules of evidence, for evidence to be admitted and given probative effect it must be "the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs." *Embers of Salisbury, Inc.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 526, 529 n.5 (1988), quoting G. L. c. 30A, § 11 (2).

law. *Zachs* v. *Department of Pub. Utils.*, *supra* at 227. There was no error.

The hearing officer rejected the interveners' motion to reopen because she found that the information provided in the press release did not bolster the interveners' assertions.[12] The hearing officer noted that both IDC and the interveners had already presented evidence on SCONOx in the direct case. We see no abuse of discretion in her determination that the press release would not have had an impact on the tentative decision.

The interveners also argue that the hearing officer applied the wrong standard. They claim that she erroneously declined to reopen the record because the press release could not support a finding that SCONOx technology is "BACT" or "LAER,"[13] when she should have based her decision on the board's statutory mandate to "minimize the environmental impacts consistent with the minimization of costs." G. L. c. 164, § 69J$^{1}$/$_4$. The interveners misinterpret the hearing officer's decision. The hearing officer declined to make a determination whether SCONOx was BACT or LAER because these determinations are properly left to other agencies.[14] She recognized the board's statutory mandate to minimize environmental impacts and costs, and concluded that the press release would not aid in this determination.

---

[12]Although the interveners filed a motion "to reopen" the record, they cited the standard for reconsideration. The hearing officer acknowledged this error but, nevertheless, addressed the motion on its merits pursuant to the regulation for reopening hearings. See 980 Code Mass. Regs. § 1.05(12).

[13]"BACT" and "LAER" are terms defined by the Federal Clean Air Act. See 42 U.S.C. §§ 7479(3), 7501(3) (1994). "BACT" stands for "best available control technology" and "LAER" stands for "lowest achievable emission rate." *Id.* The Clean Air Act is administered by the Department of Environmental Protection. See 310 Code Mass. Regs. § 7.00 (2001).

[14]The hearing officer only commented on the issue whether SCONOx was BACT and LAER because the interveners specifically requested in their motion to reopen the proceedings that the hearing officer find that SCONOx is BACT and LAER. The interveners cannot now complain that the hearing officer erred in commenting on whether SCONOx was BACT and LAER because they invited this error. "One who by his conduct induces the commission of some error by the trial court, or, in other words, who has invited error, is estopped from insisting that the action of the court is erroneous." *Deland* v. *Old Republic Life Ins. Co.*, 758 F.2d 1331, 1336 (9th Cir. 1985), quoting *Noble* v. *Miles*, 129 Cal. App. 724, 727 (1933). See *Nevins* v. *Tinker*, 384 Mass. 702, 705-706 (1981); *Fairfield* v. *Lowry*, 207 Mass. 352, 358 (1911).

The interveners contend that the hearing officer exceeded her authority because she excluded the press release on the assumption that it would not influence the full board's decision on the SCONOx technology. They argue that the board is charged with making the final decision, and the hearing officer usurped the board's authority by presuming to predict its reaction to the press release. This argument is without merit.

Pursuant to the board's regulations, the hearing officer has the authority "to regulate the course of hearings . . . to hear and rule upon motions . . . to rule upon offers of proof and to receive relevant, material, and probative evidence." 980 Code Mass. Regs. § 1.04(1)(b). The hearing officer, acting within the authority granted by this regulation, concluded that the press release was irrelevant.[15] We look on an agency's evidentiary rulings with great deference, and do not overturn them unless the ruling results in a denial of substantial justice. See *Boston Edison Co.* v. *Department of Pub. Utils.,* 419 Mass. 738, 749 (1995), and cases cited. The press release is not a scientific study, but a marketing device issued by a power generation manufacturer claiming that SCONOx is commercially available. Its claims are unsupported. Further, the full board's final decision notes the hearing officer's ruling on the press release. If the board agreed with the interveners that the press release was sufficiently valid to warrant reopening the record, it would have taken such action. There was no denial of substantial justice in the hearing officer's decision to exclude the evidence.

*7. Conclusion.* Because we find it proper in all respects, we affirm the board's decision. Judgment shall enter in the county court affirming the decision of the board.

*So ordered.*

---

[15]The interveners cite *Vinal* v. *Contributory Retirement Appeal Bd.,* 13 Mass. App. Ct. 85 (1982), for the proposition that "an agency must have access to all relevant, material and probative evidence — even if the hearing officer discounted such evidence in arriving at the tentative decision." Yet the *Vinal* case does not require that the board review testimony the hearing officer has excluded.